UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

In Re

) Case No._____

)

) **Notice of Intent to Sell Real or**

) **Personal Property, Compensate Real Estate**

) **Broker, and/or Pay any Secured Creditor's Fees**

) **and Costs; Motion for Authority to Sell Property**

) **Free and Clear of Liens; and Notice of Hearing**

) [Note: Do not use to sell personally identifiable

Debtor(s)                          ) information about individuals.]


**NOTICE IS GIVEN THAT**_____, the _____ (i.e., debtor, trustee, etc.), intends to sell the property described below and moves for authority to sell the property free and clear of liens pursuant to 11 U.S.C. § 363(f). The movant's name, address, and telephone # are: _____

_____.

If you wish to object to any aspect of the sale or fees disclosed in paragraph 7 or paragraph 15, you must:

> (1) Attend the hearing set in paragraph 16 below; and

> (2) Within 21 days of the later of the date next to the signature below or the service date in paragraph 17 below, file with the clerk at 1050 SW 6th Ave. #700, Portland OR 97204 or 405 E 8th Ave. #2600, Eugene OR 97401:

>> (a) a written response stating the specific facts upon which the objection is based, and

>> (b) a certificate of service of the response on the movant.

This document shall constitute the notice required by Local Bankruptcy Rule (LBR) 2002-1. All sections must be completed.

1. The specific subsections of 11 U.S.C. § 363(f) movant relies upon for authority to sell the property free and clear of liens are:

2. Buyer's name & relation to debtor:

3. General description of the property: [If real property, state street address here. Also attach legal description as an exhibit to the notice filed with the court.]

4.  A copy of the full property description or inventory may be examined or obtained at:

5.  The property may be previewed at: [Include time and place.]

6.  Other parties to the transaction and their relationship to the debtor are:

7.  The gross sales price is:  $_____.

All liens on the property total $ _____, of which movant believes a total of $_____ need not be paid as secured claims (because the lien is invalid, avoidable, etc., the lienholder consents to less than full payment, or part or all of the underlying debt is not allowable).

Secured creditor(s) also seek(s) reimbursement of $_____ for fees and costs.

Total sales costs will be:  $_____.

All tax consequences have been considered and it presently appears the sale will result in net proceeds to the estate after payment of valid liens, fees, costs and taxes of approximately: $_____.

8.  The sale    is    is not (mark one) of substantially all of the debtor's assets.  Terms and conditions of sale:

9.  Competing bids must be submitted to the movant no later than _____(date), and must exceed the above offer by at least _____, and be on the same or more favorable terms to the estate.

10. Summary of all available information regarding valuation, including any independent appraisals:

11. If paragraph 7 indicates little or no equity for the estate, the reason for the sale is:

and expenses and taxes resulting from the sale will be paid as follows:

12. (Ch. 11 cases only) The reason for proposing the sale in advance of approval of a plan of reorganization is:

13. The following information relates to lienholders (who are listed in priority order):

| Name | Service Address (See FRBP 7004) | Approximate Lien Amount | Indicate Treatment at Closing (i.e. Fully Pd., Partially Pd., or Not Pd.) |
|------|------|------|------|
|      |      |      |      |
|      |      |      |      |
|      |      |      |      |

14. Any liens not fully paid at closing shall attach to the sale proceeds in the same order of priority they attach to the property. Any proceeds remaining after paying liens, expenses, taxes, commissions, fees, costs or other charges as provided in this motion, shall be held in trust until the court orders payment.

15. (If real property) The court appointed real estate broker, _____, will be paid _____.

16. A hearing on this motion and any objections to the sale or fees is scheduled as follows:
    Date: _____ Time: _____ Location: _____
    _____
    Testimony will be received if offered and admissible. If no timely objection is filed, the hearing may be cancelled, and an order submitted. Parties are encouraged to check the hearing calendar at https://www.orb.uscourts.gov after the objection deadline has passed.

17. I certify that on _____ this document was served, pursuant to FRBP 7004, on the debtor(s), trustee (if any), U.S. Trustee, each named lienholder at the address listed above, the creditors' committee chairperson (if any), and their attorneys; and [unless movant is a chapter 7 trustee] that it was also sent on that date, pursuant to FRBP 2002(a), to all creditors and all parties as listed in the court's records that were obtained on _____, a copy of which is attached to the document filed with the court.

Case 18-34413-tmb11    Doc 50    Filed 04/18/19

18. For further information, contact: _____
    _____.

Date: _____        _____
                           Signature & Relation to Movant

                           _____
                           (If debtor is movant) Debtor's Address & Taxpayer ID#(s)(last 4 digits)

                           _____

Case 18-34413-tmb11    Doc 50    Filed 04/18/19

**EXHIBIT A**
**LEGAL DESCRIPTION**

**NOTICE OF INTENT TO SELL REAL OR PERSONAL PROPERTY,
COMPENSATE REAL ESTATE BROKER, AND/OR PAY ANY SECURED
CREDITOR'S FEES AND COSTS; MOTION FOR AUTHORITY TO SELL
PROPERTY FREE AND CLEAR OF LIENS; AND NOTICE OF HEARING**

A tract of land situated in the Philander Lee D.L.C. No. 56 in Section 33, Township 3 South, Range I East of the W.M., more particularly described as follows:

Beginning at an old 3/4 inch iron pipe found on the northerly line of the S.P.R.R. Co. right-of-way , which is the southwest comer of a tract of land conveyed to Package Containers , Inc., an Oregon Corporation , by deed (recording Fee No. 70 197) which is North 63E East 266 .0 feet and South 26E 58' East 631.48 feet from the southeast intersection of Third and "H" Streets of the H. A. Lee Addition to the City of Canby, Oregon; thence North 26E 58' West 321.48 feet to the most westerly comer of a tract described in deed to Georgia-Pacific Corporation, a Georgia Corporation, recorded September 17, 1985, Fee No 85 32732; thence along the northwesterly line of said Georgia¬ Pacific Corporation Tract North 63E 00' East 178.17 feet to the true point of beginning of the tract to be described; thence Northwesterly 310 feet, more or less, to a point in the southerly line of N.E. Third Avenue which bears North 63E East 60.33 feet along said southerly line from the westerly boundary of a tract of land conveyed to Package Containers, Inc., an Oregon corporation , by deed recorded January 5, 1970, Fee No. 70 197; thence North 63E East along the southerly line of Third Avenue, 170.67 feet to the northwesterly corner of a 25 foot wide tract of land described in deed to Charles A. Tucker, recording Fee No. 71 10210; thence South 26E 58' East along the southwesterly line of said Tucker tract _ 10.0 feet to the Northwesterly line of the aforementioned Georgia-Pacific Corporation tract ; thence South 63E 00' West 170.83 feet, to the true point of beginning.

040409/00001/9917014v1

1  Albert N. Kennedy, OSB No. 821429 (Lead Attorney)
     Direct Dial:  503.802.2013
2    Fax:  503.972.3713
     E-Mail:  albert.kennedy@tonkon.com
3  Ava L. Schoen, OSB No. 044072
     Direct Dial:  (503) 802-2143
4    Facsimile:  (503) 972-3843
     E-Mail:  ava.schoen@tonkon.com
5  TONKON TORP LLP
   888 SW Fifth Avenue, Suite 1600
6  Portland, OR 97204-2099

7       Attorneys for Debtor

8

9

10              UNITED STATES BANKRUPTCY COURT

11                    DISTRICT OF OREGON

| 12 | In re | Case No. 18-34413-tmb11 |
|----|-------|--------------------------|
| 13 | Davis Properties, LLC, | **DEBTOR'S MOTION FOR ORDER APPROVING SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES** |
| 14 | Debtor. | |
| 15 | | |

16         Davis Properties, LLC, Debtor and Debtor-in-Possession ("Debtor"), moves

17  this Court for an order approving the sale of Debtor's real property free and clear of all liens,

18  claims, interests and encumbrances to Civignite, LLC ("Civignite").

19                          **INTRODUCTION**

20         1.    Debtor filed its voluntary petition for relief under Chapter 11 of the

21  Title 11 of the United States Code ("Bankruptcy Code") on December 19, 2018 ("Petition

22  Date").

23         2.    Debtor is currently operating its business and managing its property as

24  Debtor-in-Possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

25

26

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

| | |
|---|---|
| 1 | **JURISDICTION** |
| 2 | 3. This Court has subject matter jurisdiction to consider this matter |
| 3 | pursuant to 28 U.S.C. §§ 157 and 1334. Venue is properly before this Court pursuant to |
| 4 | 28 U.S.C. §§ 1408 and 1409. |
| 5 | 4. The statutory predicates for the relief sought herein include Sections |
| 6 | 105(a) and 363, and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure |
| 7 | ("Bankruptcy Rules") and applicable local rules and administrative orders. |
| 8 | **BACKGROUND** |
| 9 | 5. Debtor owns real property located at 461 NE 3rd Avenue in Canby, |
| 10 | Oregon (the "Property"). Since of the Petition Date, Debtor's intent has been to sell the |
| 11 | Property and pay its creditors in full. |
| 12 | 6. The Property was listed for sale for $2,275,000. |
| 13 | 7. On April 4, 2019, Debtor received an offer from Civignite to purchase |
| 14 | the Property for the listed amount of $2,275,000 (the "Purchase Price"). |
| 15 | 8. After due consultation with its advisors, Debtor exercised its business |
| 16 | judgment to enter into a Purchase and Sale Agreement with Civignite for the sale of the |
| 17 | Property (the "PSA") because the sale is in the best interest of the estate. |
| 18 | 9. A copy of the PSA is attached hereto as **Exhibit A** and incorporated |
| 19 | herein by reference. |
| 20 | **REQUESTED RELIEF** |
| 21 | 10. By this Motion, Debtor seeks entry of an order (the "Sale Order"), |
| 22 | substantially in the form attached hereto as **Exhibit B,** authorizing and approving the sale of |
| 23 | the Property free and clear of all liens, claims, interests, and encumbrances pursuant to |
| 24 | Section 363 of the Bankruptcy Code. |
| 25 | |
| 26 | |

**Page 2 of 7** - DEBTOR'S MOTION FOR ORDER APPROVING SALE OF DEBTOR'S ASSETS
FREE & CLEAR OF LIENS, CLAIMS, & ENCUMBRANCES

Case 18-34413-tmb11    Doc 50    Filed 04/18/19

11.     The principal terms of the PSA are as follows[1]:

| | |
|---|---|
| Purchaser: | Civignite, LLC |
| Purchase Price: | $2,275,000 |
| Assets to be Acquired: | Real property located at 461 NE 3rd Avenue, Canby, OR. |
| Assumed Liabilities: | Only those liabilities arising in connection with the closing costs. It is contemplated that these will include (i) one half of the escrow fees charged by the title company, any excise tax, and any transfer tax; (ii) a prorated portion of (a) real property taxes for the tax year in which the sale is closed; (b) assessments, personal property taxes, rents, and other lessee charges arising from existing tenancies paid for in the month the sale is closed; and (c) interest on assumed obligations and utilities paid for in the month the sale is closed. |
| Excluded Liabilities: | All liabilities other than those expressly identified as Assumed Liabilities. |
| Assumption and Assignment of Executory Contracts: | None |

12.     In addition to the above general sale provisions, the following sale provisions are disclosed in accordance with applicable local rules and guidelines:

| | |
|---|---|
| Sale to Insider: | Civignite is not an insider as defined in Bankruptcy Code Section 101(31). |
| Agreements With Insiders or Management: | Civignite has not entered into any agreement with an insider of Debtor. |
| Sale Free and Clear: | The sale will be free and clear of liens and other interests, and the parties with such interests and the nature of those interests are set forth below. |
| Liens: | The Property is encumbered by a lien asserted by Clackamas County and by Thomas Young. Clackamas County has filed a |

---

[1] This summary is provided for the convenience of the Court and interested parties and in compliance with LBF 363. It is not intended to be a complete summary of the PSA. To the extent there is any conflict between this summary and the PSA, the PSA governs in all respects.

**Page 3 of 7** -   DEBTOR'S MOTION FOR ORDER APPROVING SALE OF DEBTOR'S ASSETS FREE & CLEAR OF LIENS, CLAIMS, & ENCUMBRANCES

| | | |
|---|---|---|
| | | proof of claim for a secured claim in the amount of $82,429.41. Thomas Young has filed a proof of claim for a secured claim in the amount of $1,036,781.97. |
| | Releases and Insider Benefits: | None. |
| | Private Sale; No Competitive Bidding | An auction is not contemplated because the Purchase Price will pay all claims and administrative expenses in full. |
| | Closing Deadlines: | The sale shall close on or before May 20, 2019, or the earliest practicable date after entry of the Sale Order. |
| | Good Faith Deposit: | Civignite has deposited the sum of $100,000 as earnest money. |
| | Interim Arrangement with Proposed Buyer: | None. |
| | Use of Proceeds: | Proceeds from the sale will be distributed to pay creditors and administrative expense holders in full pursuant to further order of the Court. |
| | Record Retention: | After the sale, Debtor will have reasonable access to the books and records as necessary to administer the Chapter 11 case and file final returns as appropriate. |
| | Sale of Avoidance Actions: | The sale does not include the sale of any avoidance claims under Chapter 5 of the Bankruptcy Code. |
| | Requested Findings as to Successor Liability: | Civignite shall not be a successor to Debtor and shall have no liability or responsibility for any liability or obligation of Debtor other than as expressly set forth in the PSA. The sale to Civignite will not subject Civignite or its affiliates, successors, or assigns, or their respective properties, to any liability for claims against Debtor or Debtor's Assets. |
| | Credit Bidding: | The motion does not contemplate credit bidding because the secured creditors will be paid in full from the Purchase Price. |
| | Standard for Approval: | The motion seeks approval of the proposed sale pursuant to the Debtor's business judgment standard. |
| | Relief from Bankruptcy Rule 6004(h): | This motion requests relief from Bankruptcy Rule 6004(h) because Civignite seeks to close the sale within 45 days of April 5, 2019, and because all creditors will be paid in full upon closing. |
| | Solicitation Process: | Notice of the proposed sale will be given to all parties and creditors in interest but additional offers to purchase the Property will not be solicited for the reasons set forth herein. |

**Page 4 of 7** - DEBTOR'S MOTION FOR ORDER APPROVING SALE OF DEBTOR'S ASSETS FREE & CLEAR OF LIENS, CLAIMS, & ENCUMBRANCES

| | |
|---|---|
| 1 | <div align="center">**BASIS FOR RELIEF REQUESTED**</div> |
| 2 | **A.    SALE OF ASSETS** |
| 3 | 18.    Section 363(b)(1) of the Bankruptcy Code provides that Debtor, "after |
| 4 | notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, |
| 5 | property of the estate."  This provision generally allows a debtor (subject to court approval) |
| 6 | to sell property of the estate outside the ordinary course of business where the proposed sale |
| 7 | is a sound exercise of debtor's business judgment and when the sale is proposed in good faith |
| 8 | and for fair value.  *Committee of Equity Security Holders v. Lionel Corporation (In re Lionel* |
| 9 | *Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Ernst Home Center, Inc.*, 209 B.R. 974, |
| 10 | 980 (Bankr. W.D. Wash. 1997).  When a debtor articulates a reasonable basis for its business |
| 11 | decisions, "courts will generally not entertain objections to the debtor's conduct."  *Comm. of* |
| 12 | *Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. |
| 13 | 612, 616 (Bankr. S.D.N.Y. 1986). |
| 14 | 19.    The decision to sell the Property has been approved by Debtor's owner |
| 15 | and manager given that the sale of the Property will enable Debtor to promptly pay its |
| 16 | creditors in full and will generate adequate proceeds to pay Debtor's administrative expenses |
| 17 | in full.  Debtor has determined that it is in the best interests of Debtor's estate to sell the |
| 18 | Property under 11 U.S.C. § 363 to Civignite. |
| 19 | 20.    The PSA was negotiated at arm's length, in good faith, and Debtor |
| 20 | believes its terms are fair and reasonable.  Civignite is not an "insider" of Debtor. |
| 21 | **B.    SALE FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES** |
| 22 | 21.    Debtor requests that the Court authorize the sale free and clear of all |
| 23 | liens, claims, and encumbrances which may be asserted against the Property, with any such |
| 24 | liens, claims, interests, and encumbrances attaching to the proceeds of the sale.  Civignite |
| 25 | will have no successor liability to any creditor who holds a claim as of the closing date |
| 26 | |

**Page 5 of 7** -    DEBTOR'S MOTION FOR ORDER APPROVING SALE OF DEBTOR'S ASSETS
FREE & CLEAR OF LIENS, CLAIMS, & ENCUMBRANCES

<div align="center">Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440</div>

<div align="center">Case 18-34413-tmb11    Doc 50    Filed 04/18/19</div>

1  except as specifically stated in the PSA, and all such creditors will be forever enjoined from

2  seeking to enforce or collect any such claim from or against Civignite.

3          22.     Civignite will only buy the Property if it is "free and clear" of liens.

4          23.     Holders of liens and interests in the Property will be adequately

5  protected because they will be paid in full from the sale proceeds.

6  **C.     NON-APPLICABILITY OF STAY**

7          24.     In addition to the other sale-related relief sought herein, Debtor

8  requests that the Court specifically find inapplicable any stays that might otherwise inhibit

9  Debtor's ability to close the proposed transaction for the sale of the Property immediately

10  after the Court enters an order approving the transaction, including, without limitation, those

11  arising under Bankruptcy Rule 6004.  Any delay in a closing of the sale would mean

12  substantial potential harm to Debtor, its creditors, and its estate as the terms of the proposed

13  sale require closing on or before May 20, 2019.

14  **NOTICE**

15          25.     Debtor proposes to give notice of this Motion and the Sale Hearing as

16  follows:  serve a copy of this Motion and the Sale Notice upon (a) counsel for the secured

17  creditors; (b) Civignite; (c) all persons or entities required to be served pursuant to orders of

18  this Court; (d) all parties who have filed requests for notice under Bankruptcy Rule 2002 as

19  of the date of service; (e) all persons or entities who to the knowledge of Debtor hold a lien

20  upon the assets; (f) the Office of the United States Trustee; and (g) all creditors and parties in

21  interest reflected in the mailing matrix on file with the Court.

22          26.     Debtor submits that such notice constitutes good and sufficient notice

23  of the Motion, and all proceedings to be held thereon and that no other or further notice need

24  be given.

25          WHEREFORE, Debtor respectfully requests that the Court enter an order

26  (1) approving the sale of the Property to Civignite; (2) approving such sale free and clear of

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

1    all liens, claims, and encumbrances, with such interests attaching to the sale proceeds;

2    (3) declaring that Civignite will have no successor liability; (4) declaring all stays, including,

3    without limitation, those arising under Bankruptcy Rule 6004 inapplicable; and (4) such

4    other and further relief as may be just and proper.

5             DATED this 11th day of April, 2019.

6                      TONKON TORP LLP

7

8                  By /s/ Ava L. Schoen
                     Albert N. Kennedy, OSB NO. 821429

9                      Ava L. Schoen, OSB No. 044072
                     Attorneys for Debtor

10

11    040409/00001/9916289v1

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Page 7 of 7** -    DEBTOR'S MOTION FOR ORDER APPROVING SALE OF DEBTOR'S ASSETS
                     FREE & CLEAR OF LIENS, CLAIMS, & ENCUMBRANCES

Case 18-34413-tmb11    Doc 50    Filed 04/18/19

# EXHIBIT A

## PURCHASE AND SALE AGREEMENT

DigiSign Verified: 80D51C08-8A10-4372-BD7A-0D14D20CF34C

## AGENCY ACKNOWLEDGMENT
PURCHASE AND SALE AGREEMENT
AND RECEIPT FOR EARNEST MONEY

Buyer shall execute this Acknowledgment concurrent with the execution of the Agreement below and prior to delivery of that Agreement to Seller. Seller shall execute this Acknowledgment upon receipt of the Agreement by Seller, even if Seller intends to reject the Agreement or make a counter-offer. In no event shall Seller's execution of this Acknowledgment constitute acceptance of the Agreement or any terms contained therein.

Pursuant to the requirements of Oregon Administrative Rules (OAR 863-015-0215), both Buyer and Seller acknowledge having received the Oregon Real Estate Agency Disclosure Pamphlet, and by execution below acknowledge and consent to the agency relationships in the following real estate purchase and sale transaction as follows:

(a)  ☒ **Allen Patterson** of **Capacity Commercial Group** *and Terry Tolls of T.N. Tolls Co* is the agent of: ☐ Buyer exclusively; ☒ Seller exclusively; ☐ both Seller and Buyer ("Disclosed Limited Agency")

(b)  ☒ **Aaron Bloom** of Windermere Commercial is the agent of: ☒ Buyer exclusively; ☐ Seller exclusively; ☐ both Seller and Buyer ("Disclosed Limited Agency")

If the name of the same real estate firm appears in both Paragraphs (a) and (b) above, Buyer and Seller acknowledge that a principal broker of that real estate firm shall become the Disclosed Limited Agent for both Buyer and Seller, as more fully set forth in the Disclosed Limited Agency Agreements that have been reviewed and signed by Buyer, Seller and the named real estate licensee(s).

### ACKNOWLEDGED

Buyer: Civignite, LLC    (sign) *Andy McMillan*    Date: 04-04-2019

Seller: Davis Properties, LLC    (sign) *J.T. Dav*    Date: 5 APRIL 2019

DigiSign Verified: 80D51C08-8A10-4372-BD7A-0D14D20CF34C

## PURCHASE AND SALE AGREEMENT
## AND RECEIPT FOR EARNEST MONEY

Dated:      **4 April 2019**
Between:    **Civignite, LLC, and/or Assignee (Buyer)**
And:        **Davis Properties, LLC (Seller)**

Buyer offers to buy and acquire from Seller (i) the real property and all improvements thereon located at <u>**461 NE 3rd Avenue**</u> in the City of <u>**Canby**</u>, County of <u>**Clackamas**</u>, Oregon legally described on <u>Exhibit A</u>, attached hereto and incorporated herein by reference (the "Property"), and (ii) all of Seller's right, title and interest in the Property. If no legal description is attached, Buyer and Seller will attach a legal description upon receipt and reasonable approval by both parties of the Preliminary Commitment or, if applicable, the Survey.

   1.   <u>Purchase Price</u>. The total purchase price is <u>**TWO MILLION TWO HUNDRED SEVENTY FIVE THOUSAND DOLLARS ($2,275,000.00).**</u>

   1.1.   <u>Earnest Money Deposit</u>.
   (a) Within three (3) days of the establishment of the Escrow account, Buyer shall deliver into Escrow (as defined herein), for the account of the Buyer, One Hundred Thousand Dollars (**$100,000.00**) as earnest money (the "Earnest Money") in the form of cash or other immediately available funds.

   (b) Three days (3) following the delivery of Seller's Documents (Section 4), Ten Thousand Dollars (**$10,000.00**) of the Earnest Money shall become non-refundable.

   (c) The purchase and sale of the Property shall be accomplished through an escrow (the "Escrow") which Seller has established or will establish with ~~**Cascade Title Company**~~ ~~(Melissa Mitchell)~~(the "Escrow Holder") within Three (3) days after the Execution Date. Except as otherwise provided in this Agreement: (i)the Earnest Money shall be applied to the payment of the purchase price for the Property at Closing, (ii)any interest earned on the Earnest Money shall be considered part of the Earnest Money, and (iii) all Earnest Money shall be non-refundable upon satisfaction or waiver of all Conditions as defined in Section 2.

*[handwritten: Republic Title, (commercial office), Cheryl Lentz]*

   1.2.   <u>Balance of Purchase Price</u>. Buyer shall pay the balance of the Purchase Price at Closing by cash or other immediately available funds.

   2.   <u>Conditions to Purchase</u>.   Buyer's obligation to purchase the Property is conditioned on the following:

   (a) Within **THIRTY (30)** days opening of Escrow, Buyer's approval of the results of (collectively, the "General Conditions"): (a) the Property inspection described in Section 3. below; (b) the document review described in Section 4 below.

   (c) The General Conditions, Financing Conditions, or any other Conditions noted shall be defined as "Conditions". If Buyer, in Buyer's sole discretion, should decide that the Property is unacceptable for any reason during the Due Diligence Period, Buyer may provide notice in which case all refundable Earnest Money shall be returned to Buyer and this Purchase and Sale Agreement shall terminate. If for any reason in the Buyer's sole discretion, Buyer has not given timely written waiver of the Conditions set forth in Section 2(a), or stated in writing that such

DigiSign Verified: 80D51C08-8A10-4372-BD7A-0D14D20CF34C

Conditions have satisfied, by notice given to the Seller with the time periods for such conditions set forth above, this Agreement shall be deemed automatically terminated, the refundable Earnest Money shall be promptly returned to the Buyer, and thereafter, except as specifically provided to the contrary herein, neither party shall have any further right or remedy hereunder.

3. <u>Property Inspection</u>. Seller shall permit Buyer and its agents, at Buyer's sole expense and risk, to enter the Property at reasonable times after reasonable prior notice to Seller and after prior notice to the tenants of the Property as required by the tenants' leases, if any, to conduct any and all inspections, tests, and surveys concerning the structural condition of the improvements, all mechanical (HVAC), electrical and plumbing systems, hazardous materials, Roof, pest infestation, soils conditions, wetlands, Americans with Disabilities Act compliance, and all other matters affecting the suitability of the Property for Buyer's intended use and/or otherwise reasonably related to the purchase of the Property including the economic feasibility of such purchase. Buyer shall indemnify, hold harmless, and defend Seller from all liens, costs, and expenses, including reasonable attorneys' fees and experts' fees, arising from or relating to Buyer's entry on and inspection of the Property. This agreement to indemnify, hold harmless, and defend Seller shall survive closing or any termination of this Agreement.

4. <u>Seller's Documents</u>. Within **5** working days after the Execution Date, Seller shall deliver to Buyer, at Buyer's address shown below, legible and complete copies of the following documents and other items relating to the ownership, operation, and maintenance of the Property, to the extent now in existence and to the extent such items are within Seller's possession or control:

- Preliminary Title Report & commitment for standard coverage title insurance in the amount equal to the purchase price.

- Copies of existing ALTA surveys, geotechnical reports, environmental reports, etc.

- Appraisals, if any, relating to the property.

- Copies, of any CC&R's, easements, or agreements affecting the Property, including ingress & egress.

- Any maintenance records and contracts, and warranties, as well as any information that may be pertinent to building operations.

- Any information required for environmental site assessment.

- Original building plans, specifications, construction documents, subsequent Tenant Improvement plans, AutoCAD files, etc.

- Previous three years of any financial statements or accounting records.

- Any and all items relevant condition and sale of the Property.

5. <u>Title Insurance</u>. Within **7** days after the Execution Date, Seller shall deliver to Buyer a preliminary title report from the Title Company (the "Preliminary Commitment"), showing

DigiSign Verified: 80D51C08-8A10-4372-BD7A-0D14D20CF34C

the status of Seller's title to the Property, together with complete and legible copies of all documents shown therein as exceptions to title ("Exceptions"). Buyer shall have **7** days after receipt of a copy of the Preliminary Commitment and Exceptions within which to give notice in writing to Seller of any objection to such title or to any liens or encumbrances affecting the Property. Within **7** days after the date of such notice from Buyer, Seller shall give Buyer written notice of whether it is willing and able to remove the objected-to Exceptions. Within **7** days after the date of such notice from Seller, Buyer shall elect whether to (i) purchase the Property subject to those objected-to Exceptions which Seller is not willing or able to remove or (ii) terminate this Agreement. On or before the Closing Date (defined below), Seller shall remove all Exceptions to which Buyer objects and which Seller agrees Seller is willing and able to remove. All remaining Exceptions set forth in the Preliminary Commitment and agreed to by Buyer shall be deemed "Permitted Exceptions." The title insurance policy to be delivered by Seller to Buyer at Closing shall contain no Exceptions other than the Permitted Exceptions, any Exceptions caused by Buyer and the usual preprinted Exceptions contained in an owner's standard ALTA form title insurance policy.

6. _Default; Remedies_. Notwithstanding anything to the contrary contained in this Agreement, in the event Buyer fails to deposit Earnest Money strictly as and when contemplated under Section 1.1 above, this Agreement will terminate. If the conditions, if any, to Buyer's obligation to consummate this transaction are satisfied or waived by Buyer and Buyer nevertheless fails, through no fault of Seller, to close the purchase of the Property, Seller's sole remedy shall be to retain the Earnest Money paid by Buyer. In the event Seller fails, through no fault of Buyer, to close the sale of the Property, Buyer shall be entitled to pursue any remedies available at law or in equity, including without limitation, the remedy of specific performance. In no event shall Buyer be entitled to punitive or consequential damages, if any, resulting from Seller's failure to close the sale of the Property.

7. _Closing of Sale_. Buyer and Seller agree the sale of the Property shall be closed on or before **forty-five (45) days from Opening of Escrow (the "Closing Date")**. Buyer may close at any time by providing Seller a written Seventy-two (72) hour notice to close. The sale shall be deemed "closed" when the document(s) conveying title to the Property is recorded and the Purchase Price (increased or decreased, as the case may be, by the net amount of credits and debits to Seller's account at Closing made by the Escrow Holder pursuant to the terms of this Agreement) is disbursed to Seller. At Closing, Buyer and Seller shall deposit with the Title Company all documents and funds required to close the transaction in accordance with the terms of this Agreement. At Closing, Seller shall deliver a certification in a form approved by Buyer that Seller is not a "foreign person" as such term is defined in the Internal Revenue Code and the Treasury Regulations promulgated under the Internal Revenue Code. If Seller is a foreign person and this transaction is not otherwise exempt from FIRPTA regulations, the Title Company shall be instructed by the parties to withhold and pay the amount required by law to the Internal Revenue Service. At Closing, Seller shall convey fee simple title to the Property to Buyer by a statutory warranty deed. If this Agreement provides for the conveyance by Seller of a vendee's interest in the Property by a contract of sale, Seller shall deposit with the Title Company (or other mutually acceptable escrow) the executed and acknowledged Deed, together with written instructions to deliver such deed to Buyer upon payment in full of the purchase price. At Closing, Seller shall pay for and deliver to Buyer a standard ALTA form owner's policy of title insurance (the "Policy") in the amount of the Purchase Price insuring fee simple title to the Property in Buyer subject only to the Permitted Exceptions and the standard preprinted exceptions contained in the Policy. Seller shall reasonably cooperate in the issuance to Buyer of an ALTA extended form policy of title insurance. Buyer shall pay any additional expense resulting from the ALTA extended coverage and any endorsements required by the Buyer.

DigiSign Verified: 80D51C08-8A10-4372-BD7A-0D14D20CF34C

8. <u>Closing Costs; Prorates</u>. Seller shall pay the premium for the Policy. Seller and Buyer shall each pay one-half of the escrow fees charged by the Title Company, any excise tax, and any transfer tax. Real property taxes for the tax year in which the transaction is closed, assessments (if a Permitted Exception), personal property taxes, rents and other Lessee charges arising from existing Tenancies paid for the month of Closing, interest on assumed obligations, and utilities shall be prorated as of the Closing Date. Prepaid rents, security deposits, and other unearned refundable deposits regarding the Tenancies shall be assigned and delivered to Buyer at Closing. Seller shall be responsible for payment of all taxes, interest, and penalties, if any, upon removal of the Property from any special assessment or program.

9. <u>Possession</u>. Buyer shall be entitled to exclusive possession of the Property, subject to the Tenancies existing as of the Closing Date. **Subject to mutually agreed upon terms, Buyer shall grant Seller a tenancy for up to one hundred eighty days (180) to remain in possession of the Property from the Closing Date**.

10. <u>Condition of Property</u>. Seller represents that, to the best of Seller's knowledge without specific inquiry, Seller has received no written notices of violation of any laws, codes, rules, or regulations applicable to the Property ("Laws"), and Seller is not aware of any such violations or any concealed material defects in the Property which cost more than $**500** to repair or correct. Risk of loss or damage to the Property shall be Seller's until Closing and Buyer's at and after Closing. No agent of Buyer or Seller has made any representations regarding the Property. BUYER AND SELLER AGREE THAT THE REAL ESTATE LICENSEES NAMED IN THIS AGREEMENT HAVE MADE NO REPRESENTATIONS TO ANY PARTY REGARDING THE CONDITION OF THE PROPERTY, THE OPERATIONS ON OR INCOME FROM THE PROPERTY, THE TENANCIES, OR WHETHER THE PROPERTY OR THE USE THEREOF COMPLIES WITH LAWS. Except for Seller's representations set forth in this section 10, Buyer shall acquire the Property "as is" with all faults and buyer shall rely on the results of its own inspection and investigation in Buyer's acquisition of the Property. It shall be a condition of Buyer's obligation to close, and of Seller's right to retain the Earnest Money as of Closing, that all of the Seller's representations and warranties stated in this Agreement are materially true and correct on the Closing Date. Seller's representations and warranties stated in this Agreement shall survive Closing for one (1) year.

10.1 <u>Operation of the Property.</u> Between the Execution Date and the Closing Date, Seller shall continue to operate, maintain, and insure the Property consistent with Seller's current operation practices. After Buyer has satisfied or waived the conditions to Buyer's obligation to purchase the Property, and the Earnest Money is non-refundable, Seller may not, without Buyer's prior written consent, which consent shall not be unreasonably withheld, conditioned, or delayed, enter into: (a) any new leases or occupancy agreements for the Property; (b) any material amendments or modification agreements for any existing leases or occupancy agreements for the Property; (c) any service contracts or other agreements affecting the Property that are not terminable at the Closing.

11. <u>Personal Property</u>. This sale does not include any personal property that is not integral to the operation of the facility.

12. <u>Notices</u>. Unless otherwise specified, any notice required or permitted in, or related to, this Agreement must be in writing and signed by the party to be bound. Any notice will be deemed delivered (i) when personally delivered, or (ii) on the day following delivery

DigiSign Verified: 80D51C08-8A10-4372-BD7A-0D14D20CF34C

of the notice by reputable overnight courier, or (iii) three (3) days after mailing in the U.S. mails, postage prepaid, by the applicable party in all events, to the address of the other party shown in this Agreement, unless that day is a Saturday, Sunday, or legal holiday, in which event it will be deemed delivered on the next following business day. If the deadline under this Agreement for delivery of a notice or payment is a Saturday, Sunday, or legal holiday, such last day will be deemed extended to the next following business day. Any and all notices shall also be delivered electronically (email) and may be deemed delivered upon electronic response.

13.    <u>Assignment</u>.  Buyer may assign or nominate this Agreement or Buyer's rights under this Agreement without Seller's prior written consent.

14.    <u>Attorneys' Fees</u>.  In the event a suit, action, arbitration, or other proceeding of any nature whatsoever, including without limitation any proceeding under the U.S. Bankruptcy Code, is instituted, or the services of an attorney are retained, to interpret or enforce any provision of this Agreement or with respect to any dispute relating to this Agreement, the prevailing party shall be entitled to recover from the losing party its attorneys', paralegals', accountants', and other experts' fees and all other fees, costs, and expenses actually incurred and reasonably necessary in connection therewith (the "Fees").  In the event of suit, action, arbitration, or other proceeding, the amount of Fees shall be determined by the judge or arbitrator, shall include all costs and expenses incurred on any appeal or review, and shall be in addition to all other amounts provided by law.

15.    <u>Statutory Land Use Disclaimer.</u>  BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007. THIS INSTRUMENT DOES NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL, TO DETERMINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS DEFINED IN ORS 30.930, AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007."

THE PROPERTY DESCRIBED IN THIS INSTRUMENT MAY NOT BE WITHIN A FIRE PROTECTION DISTRICT PROTECTING STRUCTURES. THE PROPERTY IS SUBJECT TO LAND USE LAWS AND REGULATIONS THAT, IN FARM OR FOREST ZONES, MAY NOT AUTHORIZE CONSTRUCTION OR SITING OF A RESIDENCE AND THAT LIMIT LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS DEFINED IN ORS 30.930, IN ALL ZONES. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL, TO VERIFY THE EXISTENCE OF FIRE PROTECTION FOR STRUCTURES AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING

DigiSign Verified: 80D51C08-8A10-4372-BD7A-0D14D20CF34C

PROPERTY OWNERS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007."

16.     Cautionary Notice About Liens.     UNDER CERTAIN CIRCUMSTANCES, A PERSON WHO PERFORMS CONSTRUCTION-RELATED ACTIVITIES MAY CLAIM A LIEN UPON REAL PROPERTY AFTER A SALE TO THE PURCHASER FOR A TRANSACTION OR ACTIVITY THAT OCCURRED BEFORE THE SALE. A VALID CLAIM MAY BE ASSERTED AGAINST THE PROPERTY THAT YOU ARE PURCHASING EVEN IF THE CIRCUMSTANCES THAT GIVE RISE TO THAT CLAIM HAPPENED BEFORE YOUR PURCHASE OF THE PROPERTY.  THIS INCLUDES, BUT IS NOT LIMITED TO, CIRCUMSTANCES WHERE THE OWNER OF THE PROPERTY CONTRACTED WITH A PERSON OR BUSINESS TO PROVIDE LABOR, MATERIAL, EQUIPMENT OR SERVICES TO THE PROPERTY AND HAS NOT PAID THE PERSONS OR BUSINESS IN FULL.

17.     Contract Execution.     The electronic transmission of any signed document including this Agreement, in accordance with Paragraph 12, shall be the same as delivery of an original. At the request of either party, the party delivering a document electronically will confirm electronic transmission by signing and delivering a duplicate original document. This Agreement may be executed in two or more counterparts, each of which shall constitute an original and all of which together shall constitute one and the same Agreement. This Agreement contains the entire agreement and understanding of the parties with respect to the subject matter of this Agreement and supersedes all prior and contemporaneous agreements between them with respect thereto. Without limiting the provisions of Section 13 of this Agreement, this Agreement shall be binding upon and shall inure to the benefit of the parties and their respective successors and assigns. The person signing this Agreement on behalf of Buyer and the person signing this Agreement on behalf of Seller each represents, covenants and warrants that such person has full right and authority to enter into this Agreement and to bind the party for whom such person signs this Agreement to the terms and provisions of this Agreement.  This Agreement shall not be recorded unless the parties otherwise agree.

18.     Addendums; Exhibits.     The following named addendums and exhibits are attached to this Agreement and incorporated within this Agreement:

Exhibit A – Legal Description

19.     Seller's Acceptance and Brokerage Agreement.     By execution of this Agreement, Seller agrees to sell the Property on the terms and conditions in this Agreement. Seller further agrees to pay a commission to Capacity Commercial Group and Windermere Commercial (Aaron Bloom) a fee equal to Five Percent (**5%**) of the Purchase Price paid out of Escrow and split 50/50 between the two brokerages.

20.     Execution Date.     The Execution Date is the later of the dates shown beneath the parties' signatures below.

21.     Governing Law.     This Agreement is made and executed under, and in all respects shall be governed and construed by the laws of the State of Oregon.

22.     Broker Disclosure.     Buyer discloses that Civignite, LLC is a fully licensed brokerage in the State of Arizona and Andrew McMillan is a licensed real estate broker in the states of Arizona and California. *Seller agrees to pay a commission of five percent (5%) of the purchase price through escrow. Said fee shall be split 50% to Civignite LLC 25% to T.N. Tolls Co, and 25% to Capacity Commercial Group*

*WINDERMERE Commercial 1165 PEARL Eugene, OR 97401*

**Exhibit A**
**7 of 9**

DigiSign Verified: 80D51C08-8A10-4372-BD7A-0D14D20CF34C

23.    <u>Time is of the Essence.</u>    This Agreement shall be deemed automatically terminated if all it is not fully executed within **twenty-four hours (24)** of the first signature.

CONSULT YOUR ATTORNEY. THIS DOCUMENT HAS BEEN PREPARED FOR SUBMISSION TO YOUR ATTORNEY FOR REVIEW AND APPROVAL PRIOR TO SIGNING. NO REPRESENTATION OR RECOMMENDATION IS MADE BY THE REAL ESTATE LICENSEES INVOLVED WITH THIS DOCUMENT AS TO THE LEGAL SUFFICIENCY OR TAX CONSEQUENCES OF THIS DOCUMENT.

**BUYER:**

**Civignite, LLC, and/or Assignee**
An Arizona limited liability company

By:  _Andy McMillan_
‎     Andrew McMillan, Manager/Owner

Date: _____ 04-04-2019 _____

<u>Physical Notices Delivered To:</u> 56 South Center Street, Mesa, Arizona 85210

<u>Electronic Notice Delivered To:</u> AMcMillan@Civignite.com; AaronBloom@Windermere.com;

**SELLER:**

**Davis Properties, LLC**
An Oregon limited liability company

By:  _J. T. Davis_
‎     John Davis, Manager/Owner

Date: _5 APRIL 2019_

<u>Physical Notices Delivered To:</u>  461 NE 3rd Avenue, Canby Oregon,

<u>Electronic Notice Delivered To:</u> Allen@CapacityCommercial.com; _____

**Exhibit A**
**8 of 9**

DigiSign Verified: 80D51C08-8A10-4372-BD7A-0D14D20CF34C

## EXHIBIT A
### Legal Description

To be provided by escrow at closing.

# EXHIBIT B

## PROPOSED FORM OF ORDER

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 18-34413-tmb11 |
| Davis Properties, LLC, | **ORDER GRANTING DEBTOR'S MOTION FOR ORDER APPROVING SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES** |
| Debtor. | |

THIS MATTER having come before the Court upon Debtor's Motion for Order Approving Sale of Debtor's Assets Free and Clear of Liens, Claims, and Encumbrances; (the "Motion") [ECF No. _____], a hearing having been held before the Court, and the Court being duly advised in the premises and finding good cause; now, therefore;

IT IS HEREBY ORDERED that:

1.      The Motion is GRANTED;

2.      Debtor is authorized to sell the real property located at 461 NE 3rd Avenue in Canby, Oregon (the "Property") to Civignite, LLC for the purchase price of $2,275,000;

3.      The sale of the Property is approved free and clear of all liens, claims, and encumbrances with such interests attaching to the sale proceeds;

**Page 1 of 2** - ORDER GRANTING DEBTOR'S MOTION FOR ORDER APPROVING SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

4.      Civignite, LLC will have no successor liability to any creditor who holds a claim as of the closing date except as specifically stated in the Purchase and Sale Agreement between Civignite, LLC and Debtor, and all such creditors will be forever enjoined from seeking to enforce or collect any such claim from or against Civignite, LLC; and

5.      All stays, including, without limitation, those arising under Bankruptcy Rule 6004 are inapplicable and this Order shall go into effect immediately upon its entry.

# # #

I certify that I have complied with the requirements of LBR 9021-1(a).

Presented by:

TONKON TORP LLP


By _____
        Albert N. Kennedy, OSB No. 821429
        Ava L. Schoen, OSB No. 044072
        888 S.W. Fifth Avenue, Suite 1600
        Portland, OR 97204-2099
        Telephone:   503-221-1440
        Facsimile:   503-274-8779
        E-mail:       al.kennedy@tonkon.com
                          ava.schoen@tonkon.com
        Attorneys for Debtor

cc:      List of Interested Parties

**Page 2 of 2** -   ORDER GRANTING DEBTOR'S MOTION FOR ORDER APPROVING SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 18-34413-tmb11    Doc 50    Filed 04/18/19

<u>**LIST OF INTERESTED PARTIES**</u>

**DEBTOR'S NOTICE OF INTENT TO SELL REAL OR
PERSONAL PROPERTY PURSUANT TO 11 USC § 363(F) (LBR 706.5)**

*In re Davis Properties, LLC*
**U.S. Bankruptcy Court Case No. 18-34413-tmb11**

## ECF PARTICIPANTS

- NOAM AMIR-BROWNSTEIN    nab@vf-law.com, srw@vf-law.com
- JONAS V ANDERSON    jonas.v.anderson@usdoj.gov
- JASON M AYRES    jayres@gsblaw.com, krhine@gsblaw.com
- SARAH FLYNN    sarah.flynn@usdoj.gov
- ALBERT N KENNEDY    al.kennedy@tonkon.com, leslie.hurd@tonkon.com;
  spencer.fisher@tonkon.com
- KATHYRN PERKINS    kathryn.e.perkins@usdoj.gov
- AVA L SCHOEN    ava.schoen@tonkon.com, leslie.hurd@tonkon.com
- US TRUSTEE, PORTLAND    USTPRegion18.PL.ECF@usdoj.gov

## NON-ECF PARTICIPANTS

**SECURED CREDITORS**

Clackamas County Assessor
Tami Little, County Assessor
150 Beavercreek Road
Oregon City, OR 97045

Thomas Young
11504 NE 266th Street
Battleground, WA 98604

**POTENTIAL BUYER**

Andrew McMillan, Manager/Owner
Civignite, LLC
56 South Center Street
Mesa, AZ 85210
*AMcMillan@Civignite.com*
*AaronBloom@Windermere.com*

Label Matrix for local noticing
0979-3
Case 18-34413-tmb11
District of Oregon
Portland
Thu Apr 11 11:30:35 PDT 2019

NOAM AMIR-BROWNSTEIN
Vial Fotheringham LLP
17355 SW Boones Ferry Rd., Ste. A
Lake Oswego, OR 97035-5225

JONAS V ANDERSON
Office of the United States Trustee
405 E. 8th Avenue
Ste 1100
Eugene, OR 97401-2728

JASON M AYRES
Garvey Schubert Barer
121 SW Morrison Street
Suite 1100
Portland, OR 97204-3141

Capacity Commercial Group LLC
805 SW Broadway #700
Portland, OR 97205-3347

City of Canby
222 NE 2nd Ave.
POB 930
Canby, OR 97013-0930

Clackamas County Assessment & Tax
150 Beavercreek Rd
Oregon City, OR 97045-4302

Clackamas County Assessor
POB 6100
Portland, OR 97228-6100

John Davis
Manager
3198 SW Wallula Ave
Gresham, OR 97080-9615

Davis Properties, LLC
461 NE 3rd. Ave.
Canby, OR 97013-3717

SARAH FLYNN
DOJ-Ust
C/O Johnson, Linda D
700 Stewart Street
Seattle, WA 98101-4439

IRS
POB 7346
Philadelphia, PA 19101-7346

John Davis
3198 SW Wallula Ave.
Gresham, OR 97080-9615

ALBERT N KENNEDY
888 SW 5th Ave #1600
Portland, OR 97204-2030

Mighty Mite Industries, Inc.
461 NE 3rd Ave.
Canby, OR 97013-3717

ODR Bkcy
955 Center NE #353
Salem, OR 97301-2555

KATHYRN PERKINS
DOJ-Ust
700 Stewart Street
Suite 5103
Seattle, WA 98101-4438

AVA L SCHOEN
888 SW 5th Ave #1600
Portland, OR 97204-2030

T.N. Tolls Co
3505 Walnut Ln
Tillamook, OR 97141-2646

Thomas O. Young
11504 NE 266th St.
Battle Ground, WA 98604-6520

Thomas O. Young
c/o Noam Amir-Brownstein
17355 SW Boones Ferry Rd., Suite A
Lake Oswego, OR 97035-5225

US Trustee, Portland
620 SW Main St #213
Portland, OR 97205-3026


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Thomas O. Young

End of Label Matrix
Mailable recipients    21
Bypassed recipients     1
Total                  22